# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| Daniel Lambeth, on Behalf of Himself and Others Similarly Situated,<br><br>        Plaintiff,<br><br>                v.<br><br>Advantage Financial Services, LLC,<br><br>        Defendant. | Case No.: 1:15-cv-33-BLW<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for final approval of a class action settlement and a motion for attorney fees. The Court held a hearing on August 3, 2015. No objections were made to the settlement. For the reasons explained below, the Court will grant the motion for final approval of the settlement and the motion for attorney fees.

## BACKGROUND

Plaintiff Daniel Lambeth brought this lawsuit against Advantage claiming that it violated the Fair Debt Collection Practices Act (FDCPA). Specifically, Lambeth alleged that Advantage would leave phone messages to debtors (1) failing to identify itself as a debt collector; and (2) failing to disclose that any information revealed by the debtor would be used to collect the debt. Lambeth sued on behalf of a class of those who had received such phone messages. He defined the class as follows:

**Memorandum Decision & Order  – page 1**

All persons (1) located in Idaho, (2) for whom Advantage Financial Services, LLC left, or caused to be left, a voice message, (3) in connection with collection of a consumer debt, (4) from February 4, 2014 through February 4, 2015.

The parties eventually reached a settlement in which (1) a class would be certified under Rule 23(b)(2) of all persons who received the illegal phone messages between February 4, 2014, and February 4, 2015 (including about 40,000 persons, the parties estimate); (2) Daniel Lambeth, the named plaintiff, would be deemed the Class Representative; (3) the Court would enter an injunction against Advantage requiring that when it contacts debtors in the future, it will identify itself as a debt collector and disclose that it is attempting to collect a debt; (4) Advantage would not admit any wrongdoing; (5) class members would not release their individual claims against Advantage, and would not receive any forgiveness of any debts that were being pursued by Advantage; (6) Lambeth would receive $1,000, obtain forgiveness of certain debts Advantage was attempting to collect, and release his individual claims against Advantage; and (7) Advantage would pay a *cy pres* award to Idaho Legal Aid in the sum of $5,000.

On June 16, 2015, the Court issued a preliminary approval of the settlement and scheduled a hearing to resolve any objections and determine if a final approval should be granted. That hearing was held on August 3, 2015, and no objections were made. The Court issues its final approval for the reasons set forth below.

## LEGAL STANDARDS

Rule 23(e) requires court approval for class settlements.  The class must meet the requirements of Rules 23(a) and (b), and must be fair, adequate, and reasonable pursuant to Rule 23(e)(2).  In examining the latter requirement, the Court may consider a number of factors, including:

(1) the strength of plaintiffs' case;
(2) the risk, expense, complexity and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel; and
(7) the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2009).

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992).  At the same time, settlement approval "requires a higher standard of fairness" when the parties reach a class action settlement prior to class certification, as they did here.  *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012).  The Court "has a fiduciary duty to look after the interests of absent class members."  *Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2015).  "The reason for the more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  *Lane,* 696 F.3d at 819.  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class

**Memorandum Decision & Order  – page 3**

members to infect the negotiations." *Lilly v. Jamba Juice Co.,* 2015 WL 1248027 at *6 (N.D.Cal. 2015).

The Ninth Circuit has identified three such subtle signs:  (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant.  *Allen,* 787 F.3d at 1224.

## ANALYSIS

## Requirements of Rules 23(a) & (b)

The proposed class meets the requirements of Rules 23(a) and (b).  The estimated size of the class is 40,000 persons, and the class members were all recipients of the allegedly improper phone messages.  The claims of proposed Class Representative Lambeth are identical to those of the class, and both he and his counsel are zealous in their representation of the absent class members.  The proposed class also satisfies the requirements of Rule 23(b)(2) because Advantage's conduct applies uniformly to the entire class, and plaintiffs are seeking injunctive relief, not monetary relief.

The Court in its preliminary approval expressed concern about the need for a class under the circumstances of this case.  In this settlement, the class members (other than Lambeth) receive nothing of direct value – they get no money, no forgiveness of debt, and no admission of wrongdoing by Advantage.  The injunction merely requires Advantage to comply with the FDCPA in the future, adding nothing to Advantage's

**Memorandum Decision & Order  – page 4**

existing legal obligations.  The *cy pres* award of $5,000 to Idaho Legal Aid can be deemed a benefit to the class members only in the most theoretical and tangential sense.

This raises a question:  Why is a class necessary?  The parties provided an answer that addresses the Court's concern:   Class certification is necessary because courts have held that the FDCPA does not provide for injunctive relief in individual actions.  *See Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 224 at n. 1 (2nd Cir. 2012) (concluding after reviewing case law that "every federal appeals court to have considered the question has held that [the FDCPA] does not [permit individual plaintiffs to seek injunctive relief]."   Thus, the class is necessary in order to enjoin Advantage from its conduct complained of here.

Consequently, the Court will grant approval under Rule 23(b)(2) to a class comprised of :

> All persons (1) located in Idaho, (2) for whom Advantage Financial Services, LLC left, or caused to be left, a voice message, (3) in connection with collection of a consumer debt, (4) from February 4, 2014 through February 4, 2015.

## Requirements of Rule 23(e)(2)

As discussed above, the class members get nothing from this settlement.  In contrast, Lambeth gets $1,000 and forgiveness of the debts Advantage was pursuing. This gap between the Class Representative and the class members creates the appearance that Lambeth sweetened his own recovery at the expense of the class members.

But that appearance masks a more complicated reality.  If the class proceeded to trial, and prevailed, they might have received a ruling that Advantage was guilty of wrongdoing, but their damages would have been limited to about three cents per class member.  That damage award would be so low because the FDCPA limits class damages to the lesser of $500,000 or 1% of the defendant's net worth.  Because Advantage's net worth is so low, the class members had no hope of any real monetary recovery at trial.  And they would risk losing and getting nothing.  In other words, a trial would not promise much more than the settlement.  The Court cannot find any unfairness here.

Moreover, the injunction does not merely enjoin Advantage from conducting similar practices but also requires Advantage to designate a monitor to ensure that it is leaving proper telephone messages for Idaho consumers.  Furthermore, this decision – and the Court's earlier decision granting preliminary approval – have been published and are available on the public record.  This is important because damages in FDCPA cases are tied to a company's history of noncompliance.  *See Trevino v. ACB Am., Inc.,* 232 F.R.D. 612, 617 (N.D.Cal. 2006).

Finally, in examining the record for the "subtle signs" of collusion discussed above, the Court can find none.  Advantage has challenged the attorney fees of plaintiffs' counsel, and there are no reverter fees as part of the settlement.  The Court will discuss the amount of attorney fees below, but it is enough to say here that the request is not excessive or disproportionate.  After examining the entire agreement in the context of this litigation, the Court finds that it is fair, adequate, and reasonable under Rule 23(e)(2).

**Memorandum Decision & Order  – page 6**

**Attorney Fees**

Plaintiffs' counsel seeks $17,122.50 in attorney fees.  Lead counsel spent 36.7 hours on the case and another estimated 3 hours on the fee petition and final approval motion for a total of 39.6 hours.  Three of the firm's other attorneys spent a total of 4.9 hours and local counsel spent 5.5 hours on the case.  Thus, the total hours spent on the case was 50.1 hours.

Advantage objects to the amount of time counsel spent on the case, pointing out that within weeks of the filing of this law suit, Advantage disclosed its net worth, revealed that the case was not worth pursuing to trial and prompting a quick settlement. Advantage argues that because the case settled so early, plaintiffs' counsel is entitled to at most $5,000 in fees.

The FDCPA provides that any debt collector who fails to comply with its provisions is liable "in the case of any successful action ... [for] the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  The award of fees is mandatory.  *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).  Fees are mandatory because Congress chose a "private attorney general" approach to assume enforcement of the FDCPA.  *Id.*  Here, pursuant to the Settlement Agreement, Advantage agreed to pay reasonable attorney fees and costs but the parties cannot agree on the fees.

Plaintiffs' counsel submitted his request for fees in his Declaration.  It contains a summary of the tasks completed and the hours spent but does not contain the typical

**Memorandum Decision & Order  – page 7**

detail where each time segment (down to the minute) is identified.  In the typical case, the Court would interpret Local Rule 54.2 to provide more detail.  But in this case the detail was minimally sufficient to satisfy the Local Rule.  One can safely assume that it takes about 50 hours of work to investigate a consumer fraud case, prepare and file the complaint, investigate the defendant's claim of its net worth, and then negotiate and finalize a class action settlement.  This would be a different case if the hours expended were more than the minimal effort necessary to get this case into a posture for the final approval of the settlement.  But here, they are equivalent, and so the Court will accept as reasonable the hours expended as stated by counsel.

The Court has examined the other objections to the fees, but finds them without merit. The hourly fee and the hours expended are reasonable and necessary, and the overall fee, considering all the required factors, is reasonable.  *Camacho,* 523 F.3d at 978.

## Conclusion

For the reasons expressed above, the Court will grant the motion for final approval and the motion for attorney fees.

## ORDER

Pursuant to the Memorandum Decision filed with this Order,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for final approval of class action settlement (docket no. 15) is GRANTED.

IT IS FURTHER ORDERED, that the motion for attorney fees (docket no. 16) is GRANTED.

**Memorandum Decision & Order  – page 8**

IT IS FURTHER ORDERED THAT:

1.     The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

2.     **CLASS MEMBERS** – Pursuant to Fed. R. Civ. P. 23(b)(2), this lawsuit is hereby certified, for settlement purposes only, as a class action on behalf of the following class:

All persons (1) located in Idaho, (2) for whom Advantage Financial Services, LLC left, or caused to be left, a voice message, (3) in connection with collection of a consumer debt, (4) from February 4, 2014 through February 4, 2015

4.     **CLASS REPRESENTATIVE AND CLASS COUNSEL** – Pursuant to Fed. R. Civ. P. 23, the Court appoints Daniel Lambeth as the Class Representative and Michael L. Greenwald of Greenwald Davidson Radbil PLLC as Class Counsel.

5.     **NOTICE** – No notice is required under Rule 23(b)(2).

6.     **FINAL CLASS CERTIFICATION** – The Court finds that the lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23.

7.     **SETTLEMENT TERMS** – The Settlement Agreement (docket no. 13-1 attached to the Declaration of Greenwald) shall be deemed incorporated herein, is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court.

D.     **ATTORNEY FEES** – Defendant will pay Class Counsel $17,122.50 for attorneys' fees and $685.00 as reimbursement of its expenses. The attorneys' fees and

**Memorandum Decision & Order  – page 9**

expenses will be paid by Defendant separate and apart from the cy pres distribution, and the Payment and Incentive Award to Plaintiff.

13.    **RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT** – The Plaintiff and his successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Settlement Agreement.

14.    No other Class Member, aside from the Plaintiff, is deemed to have released any claims against the Released Parties, and those absent Class Members' claims are tolled through the date of this Final Judgment.

15.    The lawsuit is hereby dismissed with prejudice as to Plaintiff, and without prejudice as to all other Class Members.

16.    This Order is not, and shall not be construed as, an admission by Defendant of any liability or wrongdoing.

17.    The Court hereby retains continuing and exclusive jurisdiction over the parties and all matters relating to the lawsuit and/or Settlement Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order, including the award of attorneys' fees, costs, disbursements, and expenses to Class Counsel.

18.    The Court orders Defendant to pay $5,000.00 to Idaho Legal Aid Services as a cy pres distribution.  Defendant is to make the payment to Class Counsel within five

**Memorandum Decision & Order  – page 10**

calendar days after this Order becomes final (non-appealable), and Class Counsel is ordered to then transmit the cy pres award to Idaho Legal Aid Services within five days thereafter.

19.    Defendant is further ordered to pay $1,000 to Plaintiff, within five calendar days after this Order becomes final (non-appealable).  Defendant is also ordered to satisfy, in full, the three accounts it sought to collect from Plaintiff.

20.    Defendant is to pay the attorneys' fees and expense award to Class Counsel within five calendar days after this Order becomes final (non-appealable).

IT IS FURTHER ORDERED, that the Clerk shall close this case.

DATED: August 3, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order  – page 11**